IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-00600-PAB-STV

CHARLES LEONHARD, husband of Jennifer Brooks, deceased, and
ML., a minor, by and through his father, CHARLES LEONHARD,

      Plaintiffs,

v.

CORRECT CARE SOLUTIONS, LLC, a division of Wellpath LLC,
CORRECTIONAL HEALTHCARE COMPANIES, INC., a division of Wellpath LLC,
CORRECTIONAL HEALTHCARE PHYSICIANS, P.C., aka, Great Peak's Healthcare
Services, P.C., a division of Wellpath LLC,
JEFF SHRADER, in his official capacity as Jefferson County Sheriff,
DEPUTY KELSEY L. GREY, in her individual capacity,
DEPUTY JENNIFER L. AGNEW, in her individual capacity,
REBECCA A. STRONG, in her individual capacity,
COURTNEY SLOWEY, in her individual capacity,
KATIE COYLE, in her individual capacity,
DEBORAH REYNOLDS, M.D., in her individual capacity,

      Defendants.

---

## ORDER

---

      This matter is before the Court on three motions to dismiss: Sheriff Defendants'

Motion to Dismiss Second Amended Complaint [Docket No. 24], Defendants Correct

Care Solutions, LLC, Correctional Healthcare Companies, Inc., Correctional Healthcare

Physicians, P.C., Motion to Dismiss Second Amended Complaint [Docket No. 34], and

Defendants Rebecca A. Strong, Courtney Slowey, Katie Coyle, and Deborah Reynolds,

M.D.'s Motion to Dismiss Plaintiffs' Second Amended Complaint [Docket No. 35]. The

Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

## I. BACKGROUND[1]

Plaintiffs are the husband and child of Jennifer Brooks, a detainee who tragically took her life while in custody at the Jefferson County Detention Facility ("the Facility") in Jefferson County, Colorado. Docket No. 18 at 5, 12, 26, ¶¶ 20-21, 50, 94. Defendants are various medical personnel who worked at the Facility, the companies that employ those personnel, which are all companies under the Correctional Care Solutions ("CCS") umbrella, the sheriff of Jefferson County, and two deputy sheriffs of Jefferson County. *Id.* at 5-8, ¶¶ 22-35. CCS is an organization hired by Jefferson County to work at the Facility and provide medical care. *Id.* at 5, ¶ 22. This dispute concerns the mental health care that Ms. Brooks received before her death.

On July 10, 2017, Ms. Brooks was arrested for driving erratically. *Id.* at 11, ¶ 48. She resisted arrest, forcing the arresting officers to give pursuit, eventually resulting in the car that she was driving to roll over on the street. *Id.* Ms. Brooks attempted to run away from the officers, "kicked, fought[,] and yelled during the apprehension and arrest." *Id.* at 12, ¶ 49. Ms. Brooks was charged with 15 counts, including assault on a police officer. *Id.* at 12, ¶ 49 n.2. "Most of the charges were related to her arrest by Sheriff's Deputies and EMS personnel being injured by Ms. Brooks resisting." *Id.*

When Ms. Brooks entered the Facility on July 13, 2017, she was given a mental health screening. *Id.* at 12-13, ¶ 53. "No special mental health notes were taken or observed." *Id.* However, two days later, "medical staff from CCS" performed another

---

[1] The Court assumes that the allegations in plaintiffs' complaint are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

exam, and Ms. Brooks was referred for mental health treatment.  *Id.* at 13, ¶ 54.  On

July 20, 2017, Ms. Brooks sent a "kite," which is a means of communicating detainee

needs to Facility employees, "expressing her concern over her mental health" and

requesting medication for what Ms. Brooks believed to be bipolar disorder and

schizophrenia.  *Id.*, ¶ 55.  On July 23, 2017, Ms. Brooks sent another kite expressing

the same concerns.  *Id.*

On July 24, 2017, Ms. Brooks was administered a mental health screening.  *Id.*,

¶ 56.  "CCS staff" noted that Ms. Brooks was hearing voices and having suicidal

ideation.  *Id.*  "CCS staff['s]" diagnostic impression was schizophrenia, severe cannabis

use disorder, and severe alcohol use disorder in early remission.  *Id.*  Ms. Brooks was

not referred to a psychiatrist at that time "due to substance use."  *Id.*  One day later,

another CCS nurse noted "no mental health problems."  *Id.* at 14, ¶ 57.  However, one

and a half weeks after that, "a CCS team member wrote, '08/09/17 – PTSD, schizo.'"

*Id.*, ¶ 58.

Between August 12 and August 21, 2017, Ms. Brooks sent three more kites

requesting mental health treatment.  *Id.*, ¶ 59.  As a result of those requests, Ms.

Brooks met with "LPN Slowly from CCS."  *Id.*[2]  Ms. Slowey referred Ms. Brooks to a

psychiatrist.  *Id.*  On August 29, 2017, Dr. Deborah Reynolds, a psychiatrist, examined

Ms. Brooks.  *Id.*, ¶ 60.  Dr. Reynolds prescribed "Risperdal 3mg QHS for symptoms of

psychosis."  *Id.*  On September 6, 2017, a week later, Ms. Brooks sent another kite

---

[2] The Court believes that this is a typographical error in plaintiffs' complaint and that plaintiffs meant to allege that Ms. Brooks met with one of the defendants, Ms. Slowey.

expressing concern that her medication was not working as intended. *Id.*, ¶ 61. Ms. Brooks sent an additional kite the next day and, on that same day, Ms. Slowey "was responsible for the mental health visit. No referrals were made or notes regarding treatment." *Id.* at 14-15, ¶ 61.

On September 9, 2017, Ms. Brooks "had an episode." *Id.* at 15, ¶ 62. The treatment note stated that there was not any immediate danger to Ms. Brooks. *Id.* However, Ms. Brooks' dosage was increased from 3 mg to 4 mg. *Id.* Between September 19, 2017 and October 3, 2017, Ms. Brooks sent several kites requesting that her dosage again be increased. *Id.* at 15-16, ¶ 64. On October 3, 2017, her dosage was increased to 5 mg. *Id.*

Ms. Brooks appeared to improve on the new dosage, with medical reports stating that Ms. Brooks had normal appetite, energy, and concentration levels, and was sleeping normally, although she was still experiencing some auditory hallucinations and daily mood swings. *Id.* at 16, ¶ 65. The improvement did not last long, with Ms. Brooks sending a kite on November 1, 2017 reporting delusions, hallucinations, and general issues with her mental state. *Id.*, ¶ 66. On November 20, 2017, Dr. Reynolds again examined Ms. Brooks and increased Ms. Brooks' dosage to 6 mg after learning that the improvement was temporary. *Id.*

Treatment notes from December 9, 2017 recorded a change in Ms. Brooks' demeanor as well as a lack of hygiene. *Id.* at 16-17, ¶ 67. Ms. Brooks "denie[d] anything being wrong and denie[d] any suicidal or homicidal evaluation." *Id.* Treatment notes from December 10, 2017 state that Ms. Brooks had defecated in the

shower on several occasions and, as a result, Facility personnel moved Ms. Brooks to administrative segregation for "health and safety concerns for others." *Id.* at 17, ¶ 68. Ms. Brooks' symptoms deteriorated and Ms. Brooks was "presenting bizarre and unusual behaviors." *Id.*, ¶ 70. Facility staff moved Ms. Brooks to the special housing unit ("SHU") pending a mental health evaluation. *Id.*

On December 14, 2017, Dr. Reynolds reduced Ms. Brooks' dose from 6 mg to 4 mg. *Id.* at 18, ¶ 71. Treatment notes from December 21, 2017 state that Ms. Brooks was disoriented and unaware of how long she had been incarcerated. *Id.* However, on December 24, 2017, Ms. Brooks improved slightly, "now oriented" but still "indicating psychosis." *Id.* After denying suicidal ideation, Ms. Brooks was taken off suicide watch on December 28, 2017. *Id.*, ¶ 72.

On December 30, 2017, a private "psychiatric doctor," Dr. Scott Walmer, evaluated Ms. Brooks at the request of her family. *Id.*, ¶ 73. Dr. Walmer noted that "there is evidence her psychotic thinking has improved," but she is "severely depressed." *Id.* at 19, ¶ 73. Dr. Walmer also stated that Ms. Brooks reported having suicidal thoughts over the past several weeks and that Facility records "describe behaviors that she described to me were in preparation to kill herself." *Id.*

In January 2018, Ms. Brooks appeared to be improving and the treatment notes "depict[ed] a better outlook." *Id.*, ¶ 74. She was oriented, had bright affect, normal speech, and denied thoughts of suicide. *Id.* However, Ms. Brooks continued to be housed in the SHU. *Id.* Despite this improvement, a Facility deputy submitted a kite stating that Ms. Brooks' "behavior seems to be declining" and that Ms. Brooks had

"developed a weird obsession with the trash cans/bags in the unit." *Id.*, ¶ 75. The unnamed deputy was concerned that Ms. Brooks "might be trying to find something to hurt herself with." *Id.* at 19-20, ¶ 75. Several detainees in the same cell unit as Ms. Brooks also submitted kites expressing concerns regarding Ms. Brooks' health and hygiene. *Id.* at 22-23, ¶¶ 83-87. Ms. Brooks requested an increase in her dosage back to 6 mg. *Id.* at 20, ¶ 77. At this point, Ms. Brooks was housed in a cell unit "designed to segregate detainees for medical and safety reasons." *Id.* at 21, ¶ 81 n.7.

On the night that Ms. Brooks committed suicide, two deputies were on duty, Deputy Grey and Deputy Agnew. *Id.* at 24, ¶ 89. Although "Deputies Grey and Agnew were required to do routine walk-throughs of the unit," they always "did the minimum required, and cannot specifically recall observing Ms. Brooks during any of the walk throughs." *Id.* at 25, ¶ 92. Deputy Chaun Johnson conducted a walkthrough around 3:45 a.m. and observed a "dark figure in unit 3 cell 39 laying on their back, with their right arm hanging off the edge of the concrete bed slab." *Id.* at 26, ¶ 95. Upon investigation, Deputy Johnson found Ms. Brooks with a trash bag around her neck and upper chest along with clothes covering the top part of her head. *Id.* at 26-27, ¶ 95. It was determined that the trash bag came from "the Unit 3 dayroom trash can." *Id.* at 27, ¶ 96. Jefferson County "authorities" released information regarding Ms. Brooks' death to the public before informing Mr. Leonhard, who "received the information about the death of his wife from an online posting by 9NEWS." *Id.* at 47, ¶¶ 176-77.

On February 28, 2019 plaintiffs filed this lawsuit against defendants. *See* Docket No. 1. Plaintiffs bring several claims. First, plaintiffs bring two claims under 42

U.S.C. § 1983 for deliberate indifference to Ms. Brooks' known medical needs, one based on municipal liability and the other based on individual liability. Docket No. 18 at 36-40. Second, plaintiffs bring a state law claim of medical negligence against entities under the CCS umbrella and individuals employed by CCS working at the Facility. *Id.* at 44. Third, plaintiffs bring a state law negligence claim for operation of the Facility against Sheriff Shrader in his official capacity and Deputy Grey and Deputy Agnew in their individual capacities. *Id.* at 44. Fourth, plaintiffs bring a state law claim of survival against all defendants. *Id.* at 46. Fifth, plaintiffs bring a § 1983 constitutional invasion of privacy claim against Sheriff Shrader in his official capacity for disclosing Ms. Brooks' death to the public before informing Mr. Leonhard. *Id.* at 47.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to

accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th

Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or

legal conclusions.").  "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not

shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A

plaintiff must nudge [his] claims across the line from conceivable to plausible in order to

survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's

allegations are "so general that they encompass a wide swath of conduct, much of it

innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191

(quotations omitted).  Thus, even though modern rules of pleading are somewhat

forgiving, "a complaint still must contain either direct or inferential allegations

respecting all the material elements necessary to sustain a recovery under some viable

legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III.  ANALYSIS

Before addressing the merits of defendants' motions to dismiss, the Court

addresses plaintiffs' stated intention to seek leave to file a third amended complaint

and their request to hold these motions in "abeyance" until plaintiffs file said motion.

*See* Docket No. 38 at 2 ("Plaintiffs intend to seek leave to file a 'Third Amended

Complaint.'"); Docket No. 40 at 3 ("Plaintiffs have previously noted to the Court they

intend to seek leave to file a 'Third Amended Complaint.'"); Docket No. 41 at 3 (same).

To the extent that plaintiffs' references could be construed as a motion to seek leave to

amend, this is improper because a motion "shall not be included in a response or reply" to a motion and must "be filed as a separate document." D.C.COLO.LCivR 7.1(d). The Court therefore does not consider any such request.[3] Moreover, plaintiffs have not filed a motion to amend even though nine months have passed. *See* Docket No. 41.

### A. § 1983 Deliberate Indifference

Plaintiffs' first claim is for violation of Ms. Brooks' right under the Fourteenth Amendment to be free from deliberate indifference to her known serious medical needs. Docket No. 18 at 36, ¶ 115. Plaintiffs bring this claim pursuant to § 1983 against Sheriff Shrader and defendants named in their individual capacity. *Id.* at 36 & ¶ 114.

While jail officials and "the municipal entities that employ them, cannot 'absolutely guarantee the safety of their prisoners[,]' . . . they [still] 'have a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity.'" *Cox v. Glanz*, 800 F.3d 1231, 1247-48 (10th Cir. 2015) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999); *Berry v. City of Muskogee*, 900 F.2d 1489, 1499 (10th Cir. 1990)). "Claims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Id.* (quoting *Barrie v. Grand Cty.*, 119 F.3d 862, 866 (10th Cir. 1997)) (alterations omitted). As a result, "such claims must be judged against the 'deliberate indifference to serious medical needs' test." *Id.* (quoting *Estate of Hocker ex rel.*

_____

[3] Moreover, even if the Court did consider the motions, plaintiffs have failed to properly support their arguments for leave to file a third amended complaint, only stating that doing so would fix the deficiencies outlined by the various motions to dismiss.

*Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994)).

A claim for deliberate indifference to serious medical needs has an objective and a subjective component. The objective component requires that the medical need be "sufficiently serious." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The subjective component requires that "a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (citation and quotations omitted). Only the subjective component is at issue here.

The Court first notes that plaintiffs have failed to allege which defendants took which actions and when those actions were taken. The complaint contains numerous allegations against "defendants," but rarely names a particular defendant individually. *See* Docket No. 18 *passim*. "[I]n a § 1983 action it is particularly important that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Montoya*, 662 F.3d at 1163 (quotations and citation omitted). On this basis alone the Court could grant defendants' motions to dismiss plaintiffs' first claim for relief. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (granting a motion dismiss because "the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom" made it impossible "to ascertain what particular unconstitutional acts they are alleged to have committed"). Nevertheless, the Court analyzes the allegations against each class of defendant.

### 1.  Sheriff Shrader

Plaintiffs bring two § 1983 claims against Sheriff Shrader in his official capacity for the medical care that Ms. Brooks received.  *See* Docket No. 18 at 36-38.  These clams, however, are duplicative.  "Personal-capacity suits seeks to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Id.* (quotations and citation omitted).  Importantly, such suits are not suits "against the official personally, for the real party in interest is the entity."  *Id.* For an entity, rather than an individual, to be liable, the entity must have an unconstitutional policy or practice.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Thus, to the extent that plaintiffs are alleging that Sheriff Shrader is liable under the test for personal liability, this is an incorrect application of the law and plaintiffs have failed to state a claim for deliberate indifference.  If plaintiffs instead intended to allege in their first claim that Sheriff Shrader is liable for implementing an unconstitutional policy or custom, it is duplicative of the second claim.

### 2.  Deputy Grey and Deputy Agnew[4]

The Court finds that plaintiffs have failed to state a claim for deliberate indifference against Deputy Grey and Deputy Agnew.  Assuming that Deputy Grey and

---

[4] In their motion to dismiss, the sheriff defendants argue that plaintiffs did not properly serve Deputy Agnew.  *See* Docket No. 25 at 3-4.  Plaintiffs, however, effectuated proper service on May 30, 2019.  *See* Docket No. 26.  As a result, this argument is moot.

Deputy Agnew were aware of a substantial risk of suicide, plaintiffs have failed to allege that either deputy ignored that risk. The only allegations that name Deputy Grey and Deputy Agnew are either conclusory or are allegations that the deputies knew of the risk and did *not* disregard it.

For example, plaintiffs allege that "Deputy Grey and others had taken steps to try and help [Ms. Brooks]. This included cleaning out her cell of excess trash, flushing her toilet, and getting her fresh clothing." Docket 18 at 24, ¶ 90. This allegation does not support that "Deputy Grey and others" ignored Ms. Brooks' needs, as plaintiffs allege that "Deputy Grey and others" were responsive to Ms. Brooks' needs.

The allegations that Deputy Grey and Deputy Agnew were deliberately indifferent are conclusory. For example, plaintiffs allege that "Deputies Grey and Agnew did the minimum required" on their walkthroughs "and cannot specifically recall observing Ms. Brooks during any of the walkthroughs." *Id.* at 26, ¶ 92. These allegations are conclusory because they do not explain what it is that Deputy Grey and Agnew did or did not do in their walkthroughs. As a result, the Court does not need to accept these allegations. *See Hackford*, 14 F.3d at 1465.

However, even if the Court did accept the allegations, they would be insufficient to state a claim because plaintiffs do not allege how doing the "minimum required" during walkthroughs demonstrates that Deputy Grey and Deputy Agnew were deliberately indifferent. Plaintiffs fail to connect the "minimum" amount of work that Deputy Grey and Deputy Agnew put into the walkthroughs with a disregard of a substantial risk of suicide. The only other allegation that names either deputy is one

12

that Deputy Grey did not enter Ms. Brooks' cell during a laundry exchange on the night of Ms. Brooks' suicide but, rather, did the exchange from outside the cell. *Id.* at 21, ¶ 82. But this lone allegation is not sufficient to allege that Deputy Grey disregarded a substantial risk of suicide. Plaintiffs allege that the Facility was short handed the night of Ms. Brooks' suicide and searches did not occur generally, but they do not allege that Deputy Grey was responsible for searches or that such search should have occurred during the laundry exchange. *Id.* at 21, ¶ 82 n.8.

Other than these allegations, Deputy Grey and Deputy Agnew are grouped together with "defendants" which, as the Court previously noted, fails to give Deputy Grey or Deputy Agnew "fair notice as to the basis of the claims against [them], as distinguished from collective allegations against the state." *Montoya*, 662 F.3d at 1163 (quotations and citation omitted). Plaintiffs have therefore failed to state a claim against Deputy Agnew and Deputy Grey for deliberate indifference.

*3. CCS Employees*[5]

Finally, plaintiffs bring a deliberate indifference claim against several CCS employees: Rebecca Strong, Courtney Slowey, Katie Coyle, and Dr. Deborah Reynolds. Docket No. 18 at 36. The Court finds that plaintiffs have failed to state a claim against them.

_____

[5] Although the CCS employees are not government officials, they were hired by a governmental body and are thus acting under the color of state law and may be held liable under § 1983. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 n.13 (10th Cir. 2003); *see also Renfro v. Smith*, No. 16-cv-02521-LTB-GPG, 2018 WL 1695401, at *8 (D. Colo. Apr. 6, 2018) ("The established principles of municipal liability have been found to apply to § 1983 claims against private corporations like CCS.").

First, as to Ms. Strong, a nurse, plaintiffs have failed to allege that Ms. Strong had any interaction with Ms. Brooks or treated Ms. Brooks. The only allegations regarding Ms. Strong are contained in the context of plaintiffs' claim for medical negligence, which has no bearing on whether Ms. Strong committed a constitutional violation. *See id.* at 41-42, ¶¶ 143-45. Moreover, those allegations simply recite the elements of negligence. In their response, plaintiffs argue that Ms. Strong "made numerous entries and decisions regarding the fate of the deceased," but the complaint contains no such allegations. Docket No. 41 at 6. Indeed, the complaint does not contain any factual allegations regarding Ms. Strong. The Court therefore finds that plaintiffs have failed to state a claim against Ms. Strong for deliberate indifference.

Second, as to Ms. Slowey, who is also a nurse, plaintiffs have failed to allege that Ms. Slowey disregarded Ms. Brooks' mental health needs. Plaintiffs allege that, after Ms. Brooks sent three kites between August 12 and 27, 2017, Ms. Slowey met with Ms. Brooks and referred Ms. Brooks to a psychiatrist. Docket No. 18 at 14, ¶ 59. After Ms. Brooks sent another kite on September 17, 2017, Ms. Slowey met with Ms. Brooks and was "responsible for the mental health visit." *Id.* at 14-15, ¶ 61. "No referrals were made or notes regarding treatment." *Id.* The Court finds that these allegations are insufficient to allege that Ms. Slowey was deliberately indifferent to a substantial risk of suicide. In fact, these allegations demonstrate that Ms. Slowey was diligent in responding to Ms. Brooks' kites. To the extent that plaintiffs argue that Ms. Slowey's failing to make notes or referrals after the September 7, 2017 visit demonstrates that she was deliberately indifferent, the Court finds this argument

unpersuasive. "[M]ere disagreement with a diagnosis or a prescribe course of treatment" is insufficient to state a claim for deliberate indifference because a plaintiff "has a constitutional right only to medical care – not to the type or scope of medical care which [s]he personally desires." *Sherman v. Klenke*, 653 F. App'x 580, 586 (10th Cir. 2016) (unpublished) (citations, alterations, and quotations omitted). The Court therefore finds that plaintiffs have failed to state a claim against Ms. Slowey for deliberate indifference.

Third, as to Ms. Coyle, who is a nurse, plaintiffs have failed to allege that Ms. Coyle had any more than minimal interaction with Ms. Brooks or that she disregarded a substantial risk of suicide. The only allegation against Ms. Coyle is that, on February 28, 2018, Ms. Coyle gave Ms. Brooks her medication. Docket No. 18 at 21, ¶ 81. Plaintiffs fail to explain how Ms. Coyle giving Ms. Brooks her medication demonstrates that Ms. Coyle disregarded a substantial risk of suicide. Rather, plaintiffs argue that, because Ms. Coyle was "on duty the night Ms. Brooks died" she must have violated Ms. Brooks' constitutional rights. Docket No. 41 at 6. The Court finds this argument unpersuasive. This is precisely an allegation that is "so general that [it] . . . encompass[es] a wide swath of conduct, much of it innocent," *Khalik*, 671 F.3d at 1191, and therefore must be dismissed. The Court therefore finds that plaintiffs have failed to state a claim against Ms. Coyle for deliberate indifference.

Finally, as to Dr. Reynolds, the Court finds that plaintiffs have failed to allege that Ms. Reynolds disregarded a substantial risk of suicide. Plaintiffs claim that, after Ms. Brooks expressed concerns regarding her treatment and medication, Dr. Reynolds

was responsive and continually adjusted Ms. Brooks' dosage to ensure that Ms. Brooks was receiving adequate mental health care.  Docket No. 18 at 14-16, 18, ¶¶ 60, 62, 64, 66, 71.  Moreover, if plaintiffs are arguing that Dr. Reynolds' treatment was inadequate – which plaintiffs do not clearly argue – such an argument fails for the same reason it failed as to Ms. Slowey:  "[M]ere disagreement with a diagnosis or a prescribe course of treatment" is insufficient to state a claim for deliberate indifference because a plaintiff "has a constitutional right only to medical care – not to the type or scope of medical care which [s]he personally desires."  *Klenke*, 653 F. App'x at 586 (citations, alterations, and quotations omitted).  Additionally, plaintiffs' argument that "Dr. Reynolds has a duty to her patient based on a standard of care, breached that care, and her patient died," Docket No. 41 at 7, is an argument that Dr. Reynold's committed medical negligence, not that she deprived Ms. Brooks of her constitutional rights under § 1983.  The Court therefore finds that plaintiffs have failed to state a claim against Dr. Reynolds for deliberate indifference.

### B. § 1983 Policy or Custom

Plaintiffs next assert that Sheriff Shrader and the "CCS defendants" are liable under § 1983 for implementing an unconstitutional policy or custom and failing to train their subordinates.  Docket No 18. at 38.  Plaintiffs also allege that the various CCS defendants are liable under a theory of *respondeat superior*.  *Id.* at 38 n.10.  Plaintiffs state in their complaint that "they intend to argue" the Tenth Circuit's decision holding that such a theory is not viable was wrongly decided.  *Id.*  However, plaintiffs have provided no such argument and such a claim remains prohibited by *Smedley v.*

16

*Corrections Corp. Of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005), which states that "a private actor . . . 'cannot be held liable *solely* because it employs a tortfeasor – or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Id.* (quoting *Monell*, 436 U.S. at 691). As a result, plaintiffs have failed to state a claim against CCS under a theory of *respondeat superior*.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690 (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. An entity, like defendants under the CCS umbrella, working under the color of state law may also be held liable for a *Monell* claim under § 1983. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216-1217 (10th Cir. 2003).

To state a claim for municipal liability under § 1983, a party must allege sufficient facts to demonstrate that it is plausible (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of

(1) a formal regulation or policy statement; (2) an informal custom

amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

Plaintiffs focus on an policy or custom and a failure to adequately train. Docket No. 18 at 39, ¶ 129. "A municipality is liable only when the official policy [or custom] is the moving force behind the injury alleged." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "A plaintiff must therefore 'identify a government's policy or custom' that caused the injury.'" *Cacioppo v. Town of Vail*, 528 F. App'x 929, 931 (10th Cir. 2013) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)). "The plaintiff must then show 'that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.'" *Id.* (quoting *Schenider*, 717 F.3d at 769).

"The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "[C]ontinued adherence to an approach that [the decision makers] know or should know has failed to prevent tortious conduct by employees may establish . . . conscious disregard." *Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997); *see also Rowe v. City of Marlow*, 116 F.3d 1489,

1997 WL 353001, at *6 (10th Cir. June 26, 1997) (unpublished table decision) ("Municipal liability for failure to train or supervise requires a finding that the municipality's deliberate indifference 'led an employee to violate a plaintiff's rights' or 'failed to prevent tortious conduct by employees.'" (quoting *Brown*, 520 U.S. at 407)).

To state a claim for an unconstitutional policy, custom, or failure to train, a complaint must allege what the policy, custom, or training protocols are. *Zartner v. City and Cty. of Denver*, 242 F. Supp. 3d 1168, 1173 (D. Colo. 2017) (finding that plaintiffs had failed to state a claim for deliberate indifference because the complaint made "no reference to . . .training protocols, inadequate or otherwise"). Additionally, for an unconstitutional policy, a plaintiff should set out the text of that policy. *Sandberg v. Englewood*, 727 F. App'x 950, 964 (10th Cir. 2018) (granting a motion to dismiss a claim for an unconstitutional policy because the complaint did not "set[] out the text of any [] policy").

First, as to an unconstitutional policy, plaintiffs allege that "the CCS Defendants and Jefferson County Defendants maintained unconstitutional policies" but have not set out the text of that policy, alleged what those policies are, or how those policies were the moving force behind Ms. Brooks' death. Such a "bare allegation" of an unconstitutional policy "is not nearly enough to show deliberate indifference." *See J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1298 (10th Cir. 2016).[6]

---

[6] Plaintiffs attempt to supplement their complaint in their response to the sheriff defendants' motion to dismiss. *See* Docket No. 38 at 9-10. In that response, plaintiffs allege that Sheriff Shrader created and implemented a policy where he would fail to give medical professionals employed at the Facility permission to release detainees to mental hospitals. *Id.* at 9. Plaintiffs additionally allege that there was a "wait-and-see"

Second, as to failure to train, plaintiffs allege that "CCS Defendants and Jefferson County Defendants failed to adequately train and supervise" their staff. Docket No. 18 at 28, ¶¶ 100, 103. Again, such a bare allegation is insufficient to show deliberate indifference. *See J.V.*, 813 F.3d at 1298. Additionally, plaintiff has not shown that either CCS or Sheriff Shrader were "on notice of the need for more or better training" and have not pointed to a "single incident" similar to this one. *Id.*; *see also Sandberg*, 727 F. App'x at 964 ("Nor does the complaint describe any prior incidents that would have established a pattern or practice on the part of the city that could cause us to view subsequent inaction as evidence of a policy of deliberate indifference.").

Plaintiffs' list of other lawsuits brought against various CCS entities is insufficient to allege that any CCS entity or Sheriff Shrader was on notice of the need for more or better training for three reasons. *See* Docket No. 18 at 30-36, ¶ 112.

First, the cases cited are not similar to these facts, as is required to put CCS or Sheriff Shrader on notice. *J.V.*, 813 F.3d at 1298 (noting that the appellants "did not point to even a single incident of an APS officer having any problem in calming a disabled student before the incident with C.V."). Plaintiffs argue that *Estate of Jennifer Lobato v. Correct Care Solutions, LLC*, No. 15-cv-02718-PAB-STV, 2017 WL 1197295 (D. Colo. Mar. 31, 2017), is similar to Ms. Brooks' situation. Docket No. 18 at 30,

_____

policy to mental health. *Id.* at 10. However, these allegations are not contained in plaintiffs' complaint and the Court must assess the sufficiency of plaintiffs' complaint only. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993). As a result, the Court does not consider these additional allegations.

¶ 112(a).  However, the detainee in *Lobato* suffered from severe opiate withdrawal and died as a result.  *Lobato*, 2017 WL 1197295, at *1-*2.  She did not commit suicide due to schizophrenia or psychosis.  *Id.*  As a result, deficient care as to a detainee suffering from opiate withdrawal would not put CCS or Sheriff Shrader on notice that the Facility's mental health care and suicide prevention training was also deficient.

Second, allegations from complaints filed against the CCS defendants, without more, do not put the CCS defendants or Sheriff Shrader on notice that the Facility's training is deficient regarding schizophrenia, psychosis, and suicide.  *Lobato*, 2017 WL 1197295, at *8.

Third, the only case that plaintiffs allege resulted in a jury verdict is *McGill v. Correctional Healthcare Companies, Inc.*, 13-cv-01080-RBJ-BNB (D.Colo.).  Docket No. 18 at 30, ¶ 112(b).  Plaintiffs must plausibly allege that *McGill* put the CCS defendants and Sheriff Shrader on notice that Facility employees were likely to fail to adequately respond to potential risks of suicide in schizophrenic detainees.  However, plaintiffs allege that, "[s]imilar to Ms Brooks['] case, Defendant CCS employees, acting with deliberate indifference, failed to take Mr. McGill to a hospital in a timely fashion."  Docket No. 18 at 30-31, ¶ 112(b).  Plaintiffs do not describe any specific findings in *McGill* regarding deficiency of training or how it relates to suicide and schizophrenia.  Therefore, the allegations regarding the *McGill* jury verdict do not plausibly allege that the CCS defendants or Sheriff Shrader had notice of and were deliberately indifferent to the training defects that allegedly caused Ms. Brooks' death.

The Court therefore finds that plaintiffs have failed to state a claim for entity liability under § 1983 against either the CCS defendants or Sheriff Shrader.

### C. § 1983 Privacy/Equal Protection

Plaintiffs' sixth claim for relief is a self-described "novel way to pursue a legal remedy against the Jefferson County Defendants" that has no "legal precedent." Docket No. 18 at 47, ¶ 175. Plaintiffs argue that the Jefferson County authorities' disclosure to the public of Ms. Brooks' death before plaintiffs were contacted is a violation of their "[c]onstitutionally protected right to liberty and personal security as it relates to privacy." *Id.* at 47, 49, ¶¶ 176, 185. In response to the Sheriff defendants' motion to dismiss, plaintiffs attempt to recast their argument as one under the Equal Protection Clause. Docket No. 38 at 14. The Court finds that plaintiffs have failed to state a claim.

First, plaintiffs may not supplement their sixth claim in their response to the motion to dismiss. "The Court's function on a Rule 12(b)(6) motion is . . . to assess whether *the plaintiff's complaint alone* is legally sufficient to state a claim for which relief may be granted." *Swoboda*, 992 F.2d at 290 (10th Cir. 1993) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). The Court "may not look to . . . any other pleading outside the complaint itself." *Id.* While the title of plaintiffs' sixth claim is "Equal Protect and the Public Disclosure of a Private Fact – Invasion of Privacy," the allegations themselves make no reference to the Equal Protection Clause and only focus on an invasion of privacy. Docket No. 18 at 50-51, ¶¶ 188-196. As a result, plaintiffs may not argue in their response to the Sheriff defendants' motion to dismiss

that their claim is actually one based on the Equal Protection Clause.

Second, plaintiffs admit that there is no caselaw or authority to support their sixth claim. Docket No. 18 at 47, ¶ 175. While the lack of legal precedent does not render their claim automatically implausible, they have failed to persuade the Court, either through a discussion of *Griswold v. Connecticut*, 381 U.S. 479, 485-86 (1965), or *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997), or any other legal principal or framework outlined by the Supreme Court or the Tenth Circuit, that the Court should recognize the constitutional right claimed. This is true regardless of whether the Court considers the claim to be one based on the Equal Protection Clause or on a notion of constitutional privacy. The Court therefore finds that plaintiffs have failed to state a claim.

### D.  Remaining State Law Claims

Plaintiffs' remaining claims arise under state law. *See* Docket No. 18 at 40-47. Although the Court may exercise supplemental jurisdiction over state law claims if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (alterations, citations, and quotations omitted). This rule is consistent with "[n]otions of comity and federalism," which "demand that a state court try its own lawsuits." *Id.* at

1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

Plaintiffs do not argue that the Court should retain jurisdiction over their state law claims if their federal claims are dismissed, and the Court does not find any compelling reason to do so. Accordingly, plaintiffs' fourth and fifth claims for relief will be dismissed without prejudice. *See Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir. 2012) (unpublished) (holding that, when declining to exercise supplemental jurisdiction over state-law claims, the court "had discretion either to remand the claims to the state court or to dismiss them"); *see also* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

## IV. CONCLUSION

It is therefore

**ORDERED** that Sheriff Defendants' Motion to Dismiss Second Amended Complaint [Docket No. 24] is **GRANTED**. It is further

**ORDERED** that Defendants Correct Care Solutions, LLC, Correctional Healthcare Companies, Inc., Correctional Healthcare Physicians, P.C., Motion to Dismiss Second Amended Complaint [Docket No. 34] is **GRANTED**. It is further

**ORDERED** that Defendants Rebecca A. Strong, Courtney Slowey, Katie Coyle, and Deborah Reynolds, M.D.'s Motion to Dismiss Plaintiffs' Second Amended Complaint [Docket No. 35] is **GRANTED**.  It is further

**ORDERED** that plaintiffs' first, second, and sixth claims for relief are dismissed with prejudice.  It is further

**ORDERED** that plaintiffs' fourth and fifth claims for relief are dismissed without prejudice.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

DATED April 7, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge